The panel will next hear the argument in Larios v. Atty. Gen. of the United States. Mr. Fernandes. Mr. Honor, good morning. May it please the Court, Regis Fernandes, 7th Federal Square, Newark, New Jersey. On behalf of the petitioner, Lázaro Larios, I would like to reserve five minutes' rebuttal, Your Honors. Granted. The statute at issue, if I may, Your Honor, the statute under which the petitioner was convicted, 2C-12-3A, states, A person is guilty of a crime of the third degree if he threatens to commit any crime of violence with purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation or otherwise to cause serious public inconvenience or in reckless disregard of the risk of causing such terror or inconvenience. So is the statute divisible? And do the invocations of the disjunctive here, as they appear in the statute, support an argument that this is a divisible statute? It may appear to be a divisible statute, but under federal law, it cannot be considered a divisible statute under this approach that we just apply the categorical approach. And it appears that what the federal courts want is certainty. I'm not sure you're addressing the Chief's question. Is it divisible or not? Not under federal law. And that hurts, that kills your case. Yeah. The way you win here is divisible. Why don't you want it to be divisible? Don't you want us to be able to use the modified categorical approach? We don't, because once we don't apply the modified, once we find that it's not divisible, we have to look at the whole subsection or the whole statute, Section A, under which he's been convicted. And there are many instances in this language where, well, it's overbroad, so it would not be considered, every instance under which someone would plead guilty under this statute would not necessarily involve a crime of moral turpitude. Oh, okay. So you're saying reckless disregard of the risk of causing an inconvenience is not a crime of moral turpitude. Exactly. And because some portion of the statute's not a crime of moral turpitude, then it doesn't satisfy. Exactly. So we're looking at what would be the, if it's not divisible, what would be the minimum here? It would be reckless disregard of causing, I guess, of causing serious or such inconvenience. I would say, I guess it would be causing serious public inconvenience. All right. But if, but for us to go there and agree with you, we'd have to say that these are not elements of the offense. These are, these are means. But if we disagree with you and we say, in fact, these are all elements of the offense and it is divisible, then you'd still be entitled to a remand, right? Because then you would be able to try to show on remand to the agency that your client was guilty of the risk of public inconvenience and not guilty of a crime of moral turpitude. Not necessarily. If it is, if it is divisible, we, if it would only be divisible if we're trying to figure out which, what, what, what would be the offense? Would it be threatened to commit a crime of violence with the purpose to terrorize another? Or B, I guess if we're going to divide it, B, threatened to commit a crime of violence in order to cause evacuation. But you see, even if it's divisible under the prong A, we still have the reckless disregard of causing such terror, which wouldn't be a specific intent to terrorize and therefore wouldn't be a crime of moral turpitude. Counsel, I'm confused because your brief says that you're arguing that there was error applying the categorical approach rather than the modified categorical approach. To be honest, I reconsidered my position and I did in the brief apply both standards. I said it wouldn't be a crime of moral turpitude under the categorical approach and it wouldn't be under the modified categorical approach. But you advocated for a categorical approach. Both. But I, but I do see, based on the Brown decision that the court pointed out and the Mathis decision, that the federal courts want certainty and they just basically want to be able to say, your client pled guilty to terroristic threats, New Jersey section, blah, blah, blah, section A. That's, that's a CAMT in every instance. They don't want every single case to be litigated at the federal court level and engage in a modified categorical approach to figure out, you know, where within the statute, you know, that person's offense falls within. So it may seem like other statutes, like the Pennsylvania statute, which has similar language and is divided, is divided in different subsections. It may seem, well, why would we apply the modified categorical approach in that case? Well, we're only applying the modified categorical approach to see what subsection that person's pleading guilty to. So in this case, yes, we do want under the Supreme Court's Padilla, 2010 Padilla decision, for criminal attorneys to be able to tell their clients when they plead guilty, well, your Honor, in front of the criminal judge, your Honor, this person's pleading guilty to this subsection and I'll advise them that this is not categorically a crime involving moral turpitude. And that's what the federal courts want. The federal courts want certainty in that sense. So even when you have statutes with the same exact language and it may seem unfair, if they're subdivided in certain ways, it does appear, based on the federal law, that the federal courts want us to apply the categorical approach. So this would be considered under the camp an overbroad statute and it would fail. It would not be a CIMT, a crime of moral turpitude, in every instance under the categorical approach. So I apologize for kind of going off on my brief in a different direction, but I think the BIA, the Board of Immigration Appeals, I think they got it right. I think they got it right in terms of the categorical approach gets applied every single instance to the statute, to the subsection, and we only look beyond that if we don't know which subsection the person pled guilty to, if one of the subsections would be a CIMT. So let's look to the recklessly terrorizing of another individual. Recklessly causing. That's the last. Serious public. I guess the minimum in this case would be recklessly causing serious public inconvenience, if we were to read such as to include serious public inconvenience. But let's say we disagree with you, just to circle back to where you left with Judge Hardiman. If we disagree with you, if we are looking at it as that first prong, you require intent, you think that some kind of intent needs to be found for it to be a crime of moral turpitude? A crime of moral turpitude, I think it was in the BIA's decision, they talk about reprehensible act committed with an appreciable level of consciousness or deliberation. I think that's according from the Third Circuit decision and party cut. So it necessarily involves a mens rea, a specific intent to some evil thought. So if someone's recklessly causing public inconvenience under this overbroad statute, well, it's probably a foolish thing to do, but it's not necessarily a crime of moral turpitude. So going back to the issue of taking this whole statute as an overbroad statute, I believe under that analysis, the Board of Immigration Appeals is going off and not applying its own case law in terms of strictly applying, strictly requiring evil intent within the elements of the statute. This statute does not necessarily require an intent to steal, an intent to cause serious bodily injury. Granted, under BIA case law, there are some instances where recklessness coupled with serious bodily injury can be considered crimes of moral turpitude. But in this case, we have at most, we have reckless disregard of causing serious public inconvenience. It may be someone who, it may be an instance where someone does not necessarily want to, you know, have an evil thought or an evil intent with regards to, you know, within the statute. So the instances where the court, so for example, in this case, in the Brown decision that the court wanted me to address, that decision, I believe, involved a threat to kill a judge. And in that case, they wanted to apply, they determined, it was very clear what subsection the person had pled guilty to. And that subsection required a crime of violence. And looking at the crime of violence, they determined that because crime of violence could involve arson and a threat to commit arson, that the statute was overbroad and there was no categorical federal crime of violence. So in a similar way, we know what subsection of the statute this person pled guilty to, subsection A. Applying that type of analysis, instead of applying the crime of violence analysis, we apply the crime of moral turpitude analysis. Does the statute always require intent to steal, intent to cause harm, intent to terrorize? It doesn't. It causes foolish, it looks like it requires, at a minimum, some serious recklessness and serious public inconvenience. All right. Your time has been up for a while. We'll have you back on rebuttal, Mr. Hernandez. Ms. Jarwan. Good morning. May it please the Court, Rea Jarwan, on behalf of the respondent, the Attorney General of FLE. I would like to begin by responding to the Court's February 21st order, requesting that both parties be prepared to discuss the divisibility of this statute. Assuming divisibility based on the structure and the plain language of the statute and the State Court's case in Tyndale, the statute itself is still a CIMT, a crime involving moral turpitude. If we look at the statute, there's a threat to commit a crime of violence, which is sort of the introductory phrase, and then the three subparts. And each subpart has different elements in which someone is threatening to commit a crime. All right. So we have to remand the case so the agency can determine which of those three elements Larios committed, right? Because some of them are clearly CIMTs, but when you go down the line at the bottom, creating a public inconvenience in reckless disregard of the risk, I mean, that doesn't have nearly the aggravating factors that we said in other cases are required, does it? I disagree that remand is necessary because if we look at the conviction documents, there is only one subpart of this statute that Mr. Larios was convicted of. But following up on Judge Hardiman's question, what are the aggravating factors there? You need them, right? If we are to look at this statute- You need to have aggravating factors, right? If this statute is within the reckless crimes, if it is not within the intentional, which I will get back to in a moment, but if we only look at the statute in the reckless category, then yes, there are statutory aggravating factors. And as I stated in my brief, the threat, the crime of violence, and the serious public inconvenience all provide those statutory aggravating factors. But the problem with this statute is it is a very unique statute. It does not fit squarely within this reckless category. The initial statutory provision, the threat to commit the crime of violence, requires some kind of intentional or purposeful act alone before we get to those three subparts. So there's sort of a hidden layer of a mental state that makes this case a little bit different from the simple reckless endangerment cases that this court has seen and that the board has seen. So I would argue that- This isn't a reckless endangerment statute. This is a terroristic threat statute. Under the model of penal code, it is adopted by many states, I thought by New Jersey, and this section is very similar to Pennsylvania's terroristic threats statute. Terroristic threats is a completely different statute. And the board has said in Ajami that intentional transmissions of threats are generally CIMTs, crimes involving moral turpitude. And in this case, it is a purposeful act in that sort of statutory initial provision, the threat to commit the crime of violence. And the reprehensible conduct is the crime of violence or the purpose to terrorize, as it states in subpart one. So this statute is different from those statutes requiring the statutory aggravating factors. This statute is more aligned with the intentional acts, the intentional- Are you saying that the recklessness is nugatory here because of the initial statement that if you threaten to commit crime of violence, I'm going to fall in that? I think that initial statement, that initial statutory provision sort of elevates this case beyond the mere reckless crimes that require these statutory aggravating factors. So do the various disjunctives along the way then do no work? Does the last or not separate the reckless disregard of from what you seem to be tethering it to, which is in the first phase or two of the statute? So the statute, it is a little confusing, but the three subparts are the three consequences of the threat to commit the crime of violence. Are they only that? Well, the initial threat to commit the crime of violence is for either the purpose to commit those three subparts or in reckless disregard of those three subparts. But wait a minute. Let me just stop you there because that last disjunctive following up on the chief's point or in reckless disregard of the risk of causing such terror inconvenience, that doesn't seem to refer to purpose to terrorize another or cause evacuation of a building place of assembly. It it seems to only relate to the third. Indeed. Why? Isn't that the natural way to read it? Indeed. Isn't the very nature of reckless disregard that it is. Not purposeful, at least in terms of result. No, the jury's instructions in the statute and the Tyndale case are quite clear that purpose and recklessness are the mental states for each of those three, for at least, no, actually for each of those three subsections. The jury instructions say that in order to convict the defendant, the defendant threatened to commit that crime of violence. And that threat was made with either the purpose to terrorize another cause evacuation or otherwise cause serious public inconvenience or in reckless disregard of the risk of causing terror, in reckless disregard of the risk of causing such evacuation, in reckless disregard of the risk of causing such inconvenience. But you can't square your argument with the model jury charge for New Jersey. That the model. Want us to disregard the model jury charge. The model jury charge for this statute gives the jury three options, terrorize another or reckless disregard of the risk of causing such terror or cause evacuation of a building, et cetera, or otherwise cause serious public inconvenience or in reckless disregard. So that that third one I just read is not tethered to that threatened to commit a crime of violence language that you were urging earlier. The threat to commit the crime of violence is definitely the initial statutory provision that is inherent throughout all three of those subparts. In addition to which, even the Superior Court of New Jersey prefaced its discussion of the model charge by saying, although not a definitively authoritative source. Is this the Tindall case? Yes. The Tindall case, my understanding of the statute was that the Tindall case identifies the first subpart, the purpose to terrorize another as requiring a victim's name in the jury instructions or else it would be reversible error. And without that victim's name, there is no jury unanimity. And so it distinguished that case, that subpart with subpart three, for example, which does not require a victim's name. Subpart three is the serious public inconvenience. I guess what I'm trying to understand is why you're not zeroing in on the final provision following the third and final disjunctive in reckless disregard of the risk of causing such terror inconvenience. That language, standing alone and arguing aggravators, which would be enough if demonstrated, to get you across the line for demonstrating a CIMT, right? I apologize. I might not have understood the question. In my brief, I do argue that this least culpable conduct, this threat to commit the crime of violence in reckless disregard of the risk of serious public inconvenience, that language, the least culpable conduct, is categorically a CIMT, Well, I still don't understand, then, why you were trying to, again, tether it to the earlier language, because it wouldn't seem to me to be necessary to do that, if you can analyze the reckless disregard language on its own terms. I don't think the reckless disregard language can, based on the statutory language, be on its own. It must be tethered to the threat to commit the crime of violence. Statutorily or in terms of what you can demonstrate otherwise? If through the application of the modified categorical approach. If we're going to apply the modified categorical approach, then we are looking at the conviction documents, which clearly identify that Mr. Larius was only convicted of subpart one. If we then look at subpart one, it is a crime involving moral turpitude. But if we're going to look at this from the categorical approach, and we're going to look at the least culpable conduct, that is still a crime involving moral turpitude. So your position is he was convicted of threatening to commit a crime of violence with the purpose to terrorize another? Based on the Shepard documents, the indictment, and the plea colloquy, he was convicted of subpart one, because none of the other two subparts require a victim to be named. The jury instructions don't require that. So by logical process of elimination, he was convicted of subpart one. So if we're going to look at the modified categorical approach, the outcome is the same, because he is still convicted of a crime involving moral turpitude, because it is a threat to commit a crime of violence with a purpose to terrorize someone. So that fits within the intentional transmission language. And is that the more appropriate way for us to resolve this case, or is it more appropriate for us to resolve it the way you were initially advocating, or we were questioning you by going to all of the iterations and say they're all CIMTs? I would submit to your honors that the board had a very consistent sort of decision on this case. But your honors have the ability to do a de novo review of this legal question. So if your honors look at it from the modified categorical approach, the outcome is the same. What if we take the modified categorical approach, but we think that that first action, the threat to commit a crime of violence, is either with the purpose to terrorize another or in reckless disregard. And so we have to look at recklessness, not purpose per se. I think you earlier had started to talk about what you saw as aggravating factors if we are dealing with recklessness as the least culpable mental state for that, as under the modified categorical approach. So if the argument is that the record is inconclusive as to which mental state Mr. Larius was convicted of for subpart one for the terrorize, whether it was the purpose to terrorize or in reckless disregard of the risk of terror. If that's unclear, it is his burden as the petitioner requesting relief to satisfy that burden by a preponderance of the evidence. So if it's inconclusive, he still loses on this petition. If we are going to just hypothetically discuss recklessness, the statutory aggravating factors would be the threat, the crime of violence, and the risk of terror. Those sort of make this case not in the category of the general recklessness crimes because it has these statutory aggravating factors. But why doesn't that take account of simple foolishness? I don't believe that this, based on the state case law applying this statute and based on the aggravating factors, that this would be mere foolishness. The reckless risk of terrorizing someone, which is a much more serious task, much more serious conduct that falls within the reprehensible conduct that the board has generally and historically determined to be reprehensible. But this was Judge Kelly's concern in her partial dissent in Avendano, dealing with a Minnesota statute that's phrased in the same way. And even the majority didn't rule that out, but they looked at it taking a categorical approach. But again, if we're talking about the recklessness aspect of subpart one, there is still this initial statutory provision, this threat to commit a crime of violence, which is a more purposeful, intentional action. This is not a case in which we are looking at it just from the recklessly plus statutory aggravating factors framework. This is a different type of case. It's sort of elevated outside of that framework, and it has its own inherent reprehensible conduct attached with this purposeful, intentional action initially. It's sort of a hidden mental state before we even get to the purposeful or reckless actions. And so I don't think we can look at this case and require those particular statutory aggravating factors as this court has looked at them in NAPIC and Partika. This case is sort of elevated above that. There's sort of more complex layers to the statutory language, to the seriousness of the crime, as evidenced by the way that the state has applied this case. It's involving cases where officers have been threatened to be killed, where bombs have been threatened at schools, where hit lists and guns are referenced in text messages or by students to other students to threaten those students. This statute takes on a more serious tone than mere foolishness. And I think that's quite clear from the way the state of New Jersey, the Superior Court, has looked at this case. In my remaining time, I would again look at the fact that this record is arguably conclusive. And so if we are applying the modified categorical approach, as Your Honors requested in the order, the February 21st order, by process of elimination, there's only one subpart that really is applicable to this case, and that is the terrorized subpart, subpart one, because Mr. Larios' victim was named specifically in the paperwork. So that subpart itself is an intentional transmission of a threat, as the matter of Ajami discusses, for the purpose of terrorizing an individual. How do we know that? I mean, why couldn't it be that he was trying to cause serious public inconvenience to Pally Mann? Because the jury instructions are quite clear that for the serious public inconvenience section, the prosecutor need only set forth the allegation of the serious public inconvenience. For subpart two, the name of the location needs to be inserted as the place that was evacuated. But for subpart one, the name of the victim must be identified. So because the Shepard documents here don't talk about the nature of the public inconvenience, that eliminates it? Because the Shepard documents logically eliminate those other two subparts from this. Yeah, but what, I'm asking, what eliminates it logically from the public inconvenience prompt? Is it just the naming of the victim? Well, the jury unanimity is required for the naming of the victim. According to the Tyndall case, jury unanimity is required for that element. So that is a required element that must be proven in order for a conviction on that subpart. So logically, if that person is named, then clearly the purpose of naming him in those Shepard documents is because that is the element required here for that subpart. Had they put in the Shepard documents, he caused the evacuation of the 7-Eleven store on the corner, then we would know it's under subpart two. Had the Shepard documents said he caused evacuation of the high school down the street... No, but that's the easy case. We're not in evacuation territory here, but what about the last one, the public inconvenience? Right, the jury instructions require that an allegation be set forth regarding that serious public inconvenience. That allegation was not set forth in the Shepard documents here. Okay. The only allegation was that... I understand. Yes. Thank you. Thank you very much. Mr. Fernandez, rebuttal. Would you start off, Mr. Fernandez, where Ms. Jarwan left off? Namely, you look at the Shepard documents, and the Shepard documents tell us that your client was convicted of the first part, terrorizing another, or in reckless disregard of the risk of causing such terror. Because if we apply the modified categorical approach, which is why in my brief I included the plea transcript, what does the judge ask him? The judge asks him, did you threaten to commit a simple assault, which is not a crime of moral turpitude, against Mr. Polizman, and so he identifies the threat to commit what he thinks is a crime of violence, which is a simple assault, which is not a crime of moral turpitude, and the victim, Mr. Polizman, they don't talk about intent. So we don't know what's the intent here. He didn't plead guilty to intent to terrorize. But isn't threatening to commit a crime of violence in reckless disregard of the risk of causing such terror, isn't that a CIMT? No, in the sense that it would it will, I mean, if we're applying the modified categorical approach, that's the best argument the government has. But even then, there's no specific intent to terrorize. I'm asking about reckless. No, because there's no specific, there's no evil intent. It's just someone, as I use in my brief, who's standing outside of a bar, and if we apply at 2 o'clock in the morning and someone comes up and asks him, hey, do you know where, whatever, you know, can I buy some, you know where I can buy some drugs? And he says, you know, something like, he threatens him, you know, I'm going to do something to you. Pulls out a knife and says, give me your money. Okay, we're not supposed to get into facts, but under the modified categorical approach, we don't bring up the knife. We just include any circumstance where someone can say, I'm going to commit a crime of violence, and the intent is not to terrorize someone, but maybe just to get out of a potential mugging or something like that. All right, so your argument, just to make sure we understand your argument, you're saying that recklessness is not enough under the first prong of this statute? Recklessness is not enough. Without aggravating factors, and there aren't, or are you going to get into the aggravating factors? Exactly. Lack thereof. But it's the, you know, we're talking about aggravating factors, but the only, in the CAMT situation, the only aggravating factor should be the one element, which is the mens rea, and that should be evil intent or intent to cause harm, intent to steal. It's not our case law, though. We've said recklessness is enough if there are aggravating factors, right? Exactly. So can you address the existence or absence of aggravating factors on this record? We don't, under the modified categorical approach, we don't consider aggravating factors. We don't consider the supposed knife. We don't consider that. All we consider is whether categorically reckless disregard of causing another, no, we only consider whether categorically threatening to commit a crime of violence in reckless disregard of risk of causing such terror is always a CAMT in every instance. That's the only thing we consider. But going back to the first point, if we look at the federal case law, I don't think we can break that, we can take apart the statute. I think we have to take the statute as a whole, and we always go back to the inconvenience. We never get to the point of, okay, this was under the supposed subsection 1 or A within the statute. We, under the CAMT and under Brown and under Mathis, we just take the whole statute in order to provide the federal courts with clarity so we don't have people coming up here all the time, and so that criminal lawyers can advise their clients and can advise the court under their constitutional duty, to advise of the immigration consequences that, you know, that this subsection, this crime that he's pleading guilty to will get him deported is categorically a crime of moral turpitude. That's why the courts are very strict, and that's why even one court says, well, we don't care if this person threatened to kill a judge. You know, sounds like a crime of violence. It's not, because if you look at all the instances, there's some instances where it's not categorically a crime of violence, no matter what the person did. Hopefully that doesn't turn on the characteristics of the particular judge, but I see your time is up. Take the case under advisement.